## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **TURNING POINT USA (TPUSA)** at Macomb Community College, an unincorporated expressive association, and a recognized student organization at Macomb Community College; **JULIA KOVACOVA; HANNAH OSANTOWSKE; AND JACLYN BROHL,**<br><br>              Plaintiffs,<br><br>   v.<br><br>**MACOMB COMMUNITY COLLEGE; JENNIFER HAASE, FRANK CUSUMANO, KATHERINE LORENZO, ROSEANNE DIMARIA, KRISTI DEAN, JOSEPH DE SANTIS,** and **VINCENT VIVIANO**, all individually and all in their official capacities as members of the Board of Trustees of Macomb Community College; **JAMES SAWYER**, in his official capacity as President of Macomb Community College; **JILL THOMAS-LITTLE**, individually and in her official capacity as Vice President of Student Services; **GEARY MAIURI**, individually and in his official capacity as Dean of Student & Community Services at Macomb Community College; **HUNTER WENDT**, individually and in his official capacity as Director of the Macomb College Police Department,<br><br>              Defendants. | Case No. 2:17-cv-12179-BAF-DRG<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiffs, by and through counsel, and for its Complaint against the Defendants, hereby state as follows:

### INTRODUCTION

1.    Public colleges, far from being immune to the obligations of the First Amendment, are supposed to be "the marketplace of ideas," where students can freely exchange ideas with one

another, learning how to respectfully debate and dialogue with those whose views differ from their own.

2.     At a young age, Julia Kovacova immigrated to the United States from Slovakia, where her parents and family experienced persecution for their Catholic faith, the suppression of free speech, and government seizure of property (their family farm) under the formerly-communist Slovak government. She values dearly the freedoms found in the United States and secured by our Constitution and shares those values with others wherever she goes.

3.     Because of her devotion to the cause of liberty, as a student at Macomb Community College (MCC) Julia became president of the MCC student organization Turning Point USA (TPUSA), an organization dedicated to securing those freedoms in the United States that Julia's family was denied in Slovakia. But when she, and other members of TPUSA, sought to exercise their right to speak peaceably about important issues of public policy (advocating that the value of fossil fuels to human flourishing currently outweighs environmental concerns), campus police shut them down because at MCC public expressive activity is strictly prohibited without prior permission and a permit from the administration.

4.     Julia Kovacova, Hannah Osantowske, Jaclyn Brohl ("Student Plaintiffs") and TPUSA bring this lawsuit to secure their, and other students', rights to free speech and equal protection as recognized in the United States Constitution. MCC's polices (hereinafter "Speech Permit Policies") are an unconstitutional prior restraint on speech, discriminate against the content and viewpoint of speakers in violation of the First and Fourteenth Amendments, and fail to provide equal protection of the law.

<u>**JURISDICTION AND VENUE**</u>

5.     This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

6.     This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

7.     This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and FED. R. CIV. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

## PLAINTIFFS

8.     Plaintiff Turning Point USA (TPUSA) chapter at MCC is an unincorporated expressive association comprised of Macomb Community College students.

9.     TPUSA's mission is to educate students about the importance of limited government, free markets, and capitalism through grassroots activism and peer-to-peer conversations.

10.    Plaintiff Julia Kovacova was president of TPUSA at MCC for the spring 2017 semester when the events giving rise to this action took place.

11.    As a child, Ms. Kovacova immigrated to the United States from Slovakia where members of her family experienced the rule of communism and the suppression of free speech and free exercise of religion.

12.    Having gone through the naturalization process and sworn to support and defend the Constitution of the United States of America, Ms. Kovacova takes her citizenship rights and responsibilities very seriously.

13.    Ms. Kovacova feels it is her duty as a citizen of the United States to promote and speak out in support of principles of freedom—including limited government, free markets, capitalism, and the right to work—and in opposition to forced unionization.

14.    Ms. Kovacova desires to express her message on MCC's campus through a variety of means including flyers, signs, peaceful demonstrations, hosting tables with information, inviting speakers to campus, and talking with fellow students.

15.    Hannah Osantowske is a student at MCC and member of TPUSA, she is the president-elect of the organization, and will serve as president in the fall of 2017.

16.    Ms. Osantowske's relatives fought in the United States armed forces and risked

their lives to protect the liberties protected under the United States Constitution. Her grandfather's legacy motivates her to advocate for limited government and freedom.

17.     Ms. Osantowske feels it is her duty as a citizen of the United States to promote and speak out in support of principles of freedom—including limited government, free markets, capitalism, and the right to work—and in opposition to forced unionization.

18.     Ms. Osantowske desires to express her message on MCC's campus through a variety of means including flyers, signs, peaceful demonstrations, hosting tables with information, inviting speakers to campus, and talking with fellow students.

19.     Jaclyn Brohl is a student at MCC and member of TPUSA.

20.     Before immigrating to the United States, Ms. Brohl's grandmother escaped across the wall from Eastern Germany where she experienced the suppression of freedom under the government of the German Democratic Republic. Her family's experience informs her passion for educating others about the value of freedom.

21.     Ms. Brohl feels it is her duty as a citizen of the United States to promote and speak out in support of principles of freedom— including limited government, free markets, and the right to work—and in opposition to forced unionization.

22.     Ms. Brohl desires to express her message on MCC's campus through a variety of means including flyers, signs, peaceful demonstrations, hosting tables with information, inviting speakers to campus, and talking with fellow students.

**DEFENDANTS**

23.     Macomb Community College, ("MCC") is a public community college organized and existing under the laws of the State of Michigan, and receives funding from the State of Michigan to operate.

24.     Defendants Jennifer Haase, Frank Cusumano, Katherine Lorenzo, Roseanne Dimaria, Kristi Dean, Joseph de Santis, and Vincent Viviano are**,** and were at all times relevant to this Complaint, members of the Board of Trustees of Macomb Community College (hereinafter

4

collectively, "Trustee Defendants"), and are responsible for, among other things, the adoption and authorization of policies that govern students at MCC, including the Speech Permit Policies.

25.     As members of the Board of Trustees, the Trustee Defendants have the responsibility for final policymaking authority concerning students at MCC.

26.     Each of the Trustee Defendants is responsible for enactment, amendment, and repeal of Board of Trustees' policies, including the Speech Permit Policies challenged herein, and their application to students in restricting their ability to speak freely and without a permit on campus.

27.     In June 2016, the Board of Trustees approved the Speech Permit Policies in the 2016 Macomb Community College Handbook and Rights & Responsibilities.

28.     The Speech Permit Policies in the 2016 Macomb Community College Handbook and Rights & Responsibilities were applied to plaintiffs.

29.     As members of the Board of Trustees, the Trustee Defendants possess the authority to change and enforce the policies challenged herein.

30.     The Trustee Defendants have not modified the policies governing student expression on campus, including the Speech Permit Policies and practices challenged herein, to comply with constitutional mandates.

31.     Each of the Trustee Defendants acquiesces in, sanctions, and supports the actions of the other Defendants in enforcing the policies and procedures regarding students' speech activities on campus.

32.     Each of the Trustee Defendants are sued in their official capacities for injunctive and declaratory relief and in their individual capacity for damages resulting from the Speech Permit Policies.

33.     James O. Sawyer IV is the President of Macomb Community College.

34.     The Board of Trustees has delegated to the President of the College powers to exercise discretionary authority and to perform duties vested in the Board of Trustees related to the operation, control, and management of the College.

35.    Defendant Sawyer is the chief educational and administrative officer of the College.

36.    Defendant Sawyer is responsible for enforcement of College policies, including the Speech Permit Policies challenged herein, and their application to Plaintiffs' speech.

37.    Defendant Sawyer has the authority to delegate policy enforcement responsibilities to subordinates.

38.    On information and belief Defendant Sawyer has not instructed MCC personnel, including the other defendants, to change or alter the policies and practices governing student expression on campus, including the Speech Permit Policies challenged herein, to comply with constitutional mandates.

39.    As president, Defendant Sawyer has the authority to review, approve, or reject the decisions of other College officials and the other Defendants regarding the Speech Permit Policies challenged herein.

40.    Defendant Sawyer, or Defendant Sawyer's predecessor as college president, authorized, approved, and implemented the Speech Permit Policies used to restrict Plaintiffs' expression, and permitted MCC officials to apply these policies to Plaintiffs.

41.    Defendant Sawyer is sued in his official capacity for injunctive and declaratory relief.

42.    Defendant Jill Thomas-Little is, and was at all times relevant to this Complaint, Vice President of Student Services at Macomb Community College.

43.    Defendant Thomas-Little has authority under the Speech Permit Policies to review, approve, modify, or reject requests by students to engage in expressive activity on campus.

44.    Defendant Thomas-Little permitted College officials, including the other Defendants, to apply the Speech Permit Policies challenged herein to students, including Plaintiffs.

45.    Defendant Thomas-Little possesses the authority to change and enforce the Speech Permit Policy challenged herein.

46.    Defendant Thomas-Little is sued in her official capacity for injunctive and

declaratory relief and in her individual capacity for damages resulting from the Speech Permit Policy.

47.    Defendant Geary Maiuri is, and was at all times relevant to this Complaint, Dean of Student & Community Services at Macomb Community College.

48.    Defendant Maiuri is responsible for enforcement of the Speech Permit Policies and their application to Plaintiffs' speech.

49.    Defendant Maiuri has authority under the Speech Permit Policies to review, approve, modify, or reject requests by students to engage in expressive activity on campus.

50.    Defendant Maiuri or his designee has applied the Speech Permit Policies to Plaintiffs.

51.    Defendant Maiuri has permitted College officials, including the other Defendants, to apply the Speech Permit Policies challenged herein to students, including Plaintiffs.

52.    Defendant Maiuri possesses the authority to change and enforce the Speech Permit Policies challenged herein.

53.    Defendant Maiuri is sued in his official capacity for injunctive and declaratory relief and in his individual capacity for damages resulting from the Speech Permit Policies.

54.    Hunter Wendt is, and was at all times relevant to this Complaint, Director of the Macomb College Police Department.

55.    Defendant Wendt is responsible for enforcing policies that regulate students at the College, including the Speech Permit Policies challenged herein that were applied to Plaintiffs.

56.    As Director of the Macomb College Police Department, Defendant Wendt oversees all law enforcement officers on campus, as they also enforce MCC's policies that govern student expression.

57.    Defendant Wendt, or officers under his control, enforced the Speech Permit Policies against Plaintiffs and participated in the decision that Plaintiffs could not pass out literature or engage students in discussion in an open, generally accessible location on campus without first

obtaining prior permission of the College.

58.     Defendant Wendt has permitted College officials to apply the Speech Permit Policies challenged herein to students, including Plaintiffs.

59.     Defendant Wendt is sued in his official capacity as Director of the Macomb College Police Department for injunctive and declaratory relief and his individual capacity for damages resulting from the Speech Permit Policies.

60.     Each and every act of Defendants alleged herein was committed under the color of state law as each Defendant exercised power possessed by virtue of state law and each act was made possible only because each Defendant was clothed with the authority of state law.

### FACTUAL BACKGROUND

61.     Macomb Community College is a public college organized and existing under the laws of the State of Michigan, receiving funding from the State of Michigan to operate.

62.     The College's four campuses average over 40,000 students in total annual enrollment.

63.     The events giving rise to this complaint occurred on Center Campus.

64.     Center Campus is composed of various publicly-accessible buildings and outdoor areas, including public streets, sidewalks, open-air quadrangles, and parks.  A copy of the Center Campus map is attached as Exhibit 1 to this Complaint.

65.     The outdoor areas of Center Campus are open to the public and there are no gates or barriers to pedestrian entry.

66.     The Campus is maintained like a park with large cultivated grass areas, a small creek, trees, benches, and sidewalks.

67.     Center Campus is approximately 230 acres.  A Google Maps satellite view of Center Campus is attached as Exhibit 2 to this Complaint.

68.     The College's campus has many suitable streets, sidewalks, open-air quadrangles, parks, and open spaces where expressive activity will not interfere with or disturb the College's educational environment or access to buildings and sidewalks.

69.     The Speech Permit Policies are contained in various sections of the 2016 Macomb Community College Handbook and Rights & Responsibilities (the "Handbook") as well as in the unwritten practice and application of the policies by Defendants to expression on campus. A copy of the 2016 Macomb Community College Handbook and Rights & Responsibilities is attached as Exhibit 3 to this Complaint.

### THE SPEECH PERMIT POLICIES

70.     Macomb Community College regulates student speech through Handbook sections titled, "Disturbance in a Public Place," "Selling, Soliciting and Advertising," and "Policy on Expressive Activity." These policies are implemented through additional unwritten practices and procedures not included in the Handbook. These written and unwritten policies combined are herein referred to as the "Speech Permit Policies."

71.     The Handbook's "Policy on Expressive Activity" prohibits all "expressive activity" anywhere on "college grounds" unless the Dean of Student and Community Services preapproves the expression. Ex. 3 at 8.

72.     "Expressive activity is defined as the carrying or displaying of signs or placards, leafleting, campaigning, marches, rallies, parades, demonstrations, protests, assemblies, speeches, circulation of petitions and/or any public demonstration on the grounds." Ex. 3. at 8.

73.     "The grounds of the College are defined as all lands and buildings of all campuses of Macomb Community College." Ex. 3. at 8.

74.     "Requests [to engage in expressive activity] must be made in writing to the Dean during regular business hours at least 48 hours prior to any expressive activity on a form supplied by the College." Ex. 3 at 8.

75.     According to the policies and practices of the College, this request must be submitted in person at the South Campus.

76.     The request to engage in expressive activity must be in writing and include the name, address, and telephone number for at least two contact persons. Ex. 3 at 8.

77.     The request to engage in expressive activity must state the date and specific hours

9

"requested for the expressive activity and duration of the expressive activity." Ex. 3 at 8.

78.     The request to engage in expressive activity must include the "area requested for use." Ex. 3 at 8.

79.     In practice, if the request is approved, students are assigned a small "speech zone" and must stay within that zone to express themselves.

80.     On information and belief, the speech zone at Central Campus is approximately .001% of the 230 acre campus.

81.     The request to engage in expressive activity must include the "number of anticipated participants" and "structures to be used in the expressive activity." Ex. 3 at 8.

82.     "[T]he Dean has been delegated the authority to approve, modify or deny an application for expressive activity." Ex. 3 at 8.

83.     Although the Handbook states that "The Dean will not take the content of the speech into consideration when approving, modifying or denying an application" the College has published no objective and comprehensive criteria for College officials and the Defendants to use when determining whether to approve, modify, or deny an application for solicitation on campus. Ex. 3 at 8-9.

84.     The request for permission to engage in expression on campus must be made in writing, and any appeal of a denial of permission must be made in writing stating the basis for the appeal no later than 24-hours from the denial. However, there is no requirement that Defendants' decision to deny or modify the request for permission to engage in expression on campus be in writing or state any reason or justification for a denial or modification of a request.

85.     If the content of requested expressive activity involves a labor dispute or a labor union desires to engage in expressive activity, "[t]his [expressive activity] policy does not apply." Ex. 3 at 10.

86.     The Speech Permit Policies do not distinguish between students or faculty who wish to engage in expression on campus and any non-students or visitors, thereby giving student and faculty speakers no greater freedom to speak on their own campus than any other outside

speaker.

87. The "Disturbance in Public Place" policy, also included in the Handbook, incorporates the above referenced "Policy on Expressive Activity" and prohibits all expressive activity unless pre-approved.

88. The Speech Permit Polices are vague and contain conflicting provisions.

89. While the "Policy on Expressive Activity" authorizes the Dean of Student Activities to grant or deny permission for expressive activity, the Disturbance in Public Place policy instead requires that "[p]ermission for such activities must be obtained from the Vice President of Student Services or his/her designee." Ex. 3 at 3.

90. The Disturbance in Public Place Policy does not require that a decision to deny permission to engage in expressive activity be in writing or state the reasons for denial.

91. The "Selling, Soliciting and Advertising" Policy, also included in the Handbook, requires that "All materials . . . distributed . . . on College property must be approved by the Office of the Dean, Student & Community Services and/or the director of the specific facility." Ex. 3 at 6.

92. The Selling, Soliciting and Advertising Policy does not require that a decision to deny permission to engage in expressive activity be in writing or state the reasons for denial.

93. Upon information and belief, Defendants have no policies that set forth objective or comprehensive criteria for College officials, including Defendants, to use when determining whether to approve, modify, or deny an application for expressive activity on campus under any of the policies regulating expressive activity.

94. Upon information and belief, Defendants possess unbridled discretion to disallow or restrict the dissemination of speech on campus based on content and viewpoint.

95. The Speech Permit Policies prohibit spontaneous speech or expressive activity on campus for any purpose.

96. The Speech Permit Policies prohibit anonymous speech or expressive activity on campus for any purpose.

97.     The Speech Permit Policies, which allow Defendants Thomas-Little, and/or Maiuri to grant or deny to students permission to speak on campus, and approve or deny their ability to distribute educational literature, contain no guidelines or standards to limit the discretion of the administrator enforcing the policy.

98.     The penalties for students that speak without a speech permit can be severe.

99.     The Handbook provides that "College Administrators and College Police shall be charged with the responsibility and authority to enforce these rules and regulations as well as applicable federal, state and local laws, statutes, and ordinances." Ex. 3 at 7.

100.    "Persons accused of violating these rules may be reported to the law enforcement agency having jurisdiction. Students and College employees may be subject to discipline." Ex. 3 at 7.

101.    According to the Macomb Community College Police Department website, "All criminal offenses, as well as violations of college rules and regulations that are committed by college students, are reported to the Dean of Students for possible disciplinary action or sanctions."

102.    Upon information and belief, Defendants maintain unbridled discretion to take the content and viewpoint of expressive activity into account when administering discipline to students who have engaged in expressive activity without a permit.

103.    Upon information and belief, Defendants decisions to discipline students for speaking without a permit are not limited by exhaustive, objective, content and viewpoint neutral criteria.

**ADDITIONAL EXPRESSIVE ACTIVITY POLICIES NOT CHALLENGED**

104.    In addition to these requirements the policies require that "[s]igns or banners supported by freestanding devices may not be left unattended, i.e., an individual must be stationed within two feet of a freestanding sign or banner at all times to prevent damage to the property and injury to individuals." Ex. 3 at 10.

105.    The policy also provides: "expressive activity on the College grounds may occur only between the hours of 8:00 a.m. and 8:00 p.m. and shall at no time block any entrance or exit

of the buildings or impede free access to the buildings or parking lots by its students, faculty, employees, occupants or the public. Expressive activity shall not impede or interfere with College business, the educational process, or public access to and use of the College grounds. The College reserves the right to stop any expressive activity when it interferes with or disrupts the normal activities of the College; interferes with the educational process; or violates any of the conditions covering expressive activity under this policy." Ex. 3 at 9.

106.    "Expressive activity inside College buildings is prohibited." Ex. 3 at 10.

### DEFENDANTS' VIOLATION OF PLAINTIFFS' FREEDOM OF SPEECH

107.    Plaintiffs, TPUSA and its student members, wish to speak with other students at MCC regarding important social, cultural, and political issues.

108.    Educating and recruiting other students is essential to the mission of TPUSA.

109.    In the past, TPUSA members have applied for and received permission to engage in expressive activity on campus, but were assigned a small speech zone which they were required to stay in.

110.    Plaintiffs' ability to effectively communicate its message was and is limited by Defendants' limitation of their speech to a small speech zone.

111.    Plaintiffs' ability to effectively communicate its message was and is limited by Defendants' requirement that expressive activity receive pre-approval.

112.    On April 24, 2017, TPUSA members, including Student Plaintiffs, went to a large open area on MCC Center Campus to talk with students about fossil fuels, including offering educational literature about the benefits of fossil fuels to human flourishing and collecting signatures to support fossil fuels. A copy of the literature is attached as Exhibit 4.

113.    Plaintiffs did not block access to buildings or pedestrian traffic and did not interfere with any MCC activities or other planned events on campus.

114.    While distributing literature, they did not force the literature on anyone who was unwilling to take it, harass those who were not interested, or chase anyone down so that they would take the literature.

115.    When engaging students in conversation, they did not force anyone to participate in a conversation, berate those who were not interested in conversing, or denigrate those who disagreed with them.

116.    While Mss. Kovacova, Osantowske, and Brohl were engaged in these activities, campus police officers approached and informed them that they were violating the Speech Permit Policies because they had not obtained prior permission from MCC to express themselves on campus.

117.    Campus police informed Plaintiffs, students at Macomb Community College, that they could be considered trespassers for speaking with others on campus without a permit, and that continuing to speak, collect signatures, and handout literature without permission could be deemed trespassing.

118.    Campus police asked Plaintiffs about the content of the petition for which they were seeking signatures, and for the name of their student organization.

119.    Campus police instructed Plaintiffs to cease expressive activities and informed them that all expressive activities must be pre-approved by administrators at the South Campus.

120.    Campus police informed Plaintiffs that in order to engage in expressive activity they must first fill out an application at the office on South Campus and wait for approval.

121.    Campus police informed Plaintiffs that the application process was no mere formality. According to police, it is "more than paperwork. It's obtaining permission. Permission to come and do whatever you are doing."

122.    TPUSA members, including Mss. Kovacova, Osantowske, and Brohl have not participated in public expressive activities on campus since this incident out of concern that they may be charged with violating campus policy and receive adverse consequences from the College.

123.    TPUSA members, including Mss. Kovacova, Osantowske, and Brohl desire to engage in protected expression on campus—including oral communication and literature distribution—without obtaining prior permission of the College, but have refrained from doing so for fear of punishment.

124.     Groups of students regularly engage in discussions on the sidewalks and other public areas of the MCC campus without interference by campus police or administrators, but when Plaintiffs attempted to discuss the benefits of fossil fuels on the sidewalks and other public areas of the MCC campus, they were ordered to cease and desist.

125.     MCC's enforcement of the Speech Permit Policies against Plaintiffs burdens their speech in multiple ways.

126.     Plaintiffs desire to engage in speech in the open, outdoor, generally accessible areas on campus without obtaining prior permission of the College and without being limited to the specific areas designated by the school as permissible to conduct expression.

127.     The Speech Permit Policies do not provide a means for students to speak or hand out written material spontaneously on campus.

128.     The Speech Permit Policies does not provide any objective criteria for Defendants to use when deciding whether to approve or reject students' requests to speak on campus.

129.     The Speech Permit Policies do not limit the discretion of Defendants when deciding whether to approve or reject a student's request to speak or distribute literature on campus or in deciding in which location a student is allowed to speak.

130.     Students or student organizations that violate the Speech Permit Policies are subject to disciplinary action under College policies and state criminal trespass laws.

131.     Plaintiffs are currently refraining from engaging in oral and written expression with other students on campus due to the Speech Permit Policies.

132.     Plaintiffs are chilled in their ability to promote TPUSA and its mission and discuss important issues on campus due to the Speech Permit Policies.

133.     If not for the Speech Permit Policies, Plaintiffs would immediately engage in discussions and distribute literature on campus advocating for their political and other ideas, including  advocacy for limited government, free markets, capitalism, and the right to work, and against forced unionization.

134.     Plaintiffs refrain from engaging in expressive activity at MCC for fear of

punishment under the College's Speech Permit Policies and state criminal trespass laws.

135.    As a result of Defendants' enactment and enforcement of their Speech Permit Policies to Plaintiffs, Plaintiffs are unable to effectively communicate their ideas to other students on campus.

<u>**ALLEGATIONS OF LAW**</u>

136.    At all times relevant to this Complaint, each and all of the acts alleged herein were attributed to the Defendants who acted under color of a statute, regulation, custom, or usage of the State of Michigan.

137.    Defendants knew or should have known that enforcing the Speech Policies against Plaintiffs violated Plaintiffs' constitutional rights.

138.    Plaintiffs are suffering irreparable harm from Defendants' Speech Permit Policies.

139.    Plaintiffs have no adequate or speedy remedy at law to correct or redress the deprivation of their rights by Defendants.

140.    Unless the conduct of Defendants is enjoined, Plaintiffs will continue to suffer irreparable injury.

**FIRST CAUSE OF ACTION**
<u>**Violation of Plaintiffs' First Amendment Right to Freedom of Speech through Prior Restraint, Overbreadth, and Content and Viewpoint Discrimination**</u>

141.    Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–139 of this Complaint.

142.    Speech including oral and written expression is entitled to comprehensive protection under the First Amendment.

143.    Political speech is fully protected by the First Amendment.

144.    The First Amendment also protects citizens' right to engage in spontaneous and anonymous speech.

145.    First Amendment rights extend to campuses of public colleges.

146.    The sidewalks and open spaces of the College's campus are designated—if not

traditional—public forums for speech and expressive activities by students enrolled at the College.

147.    The First Amendment's Free Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits content and viewpoint discrimination in the public forums for student speech and expression on the campus of a public college.

148.    A public university's ability to restrict speech—particularly student speech—in a public forum is limited.

149.    Under the First Amendment's Free Speech Clause, a prior restraint on citizens' expression is presumptively unconstitutional, unless it (1) does not delegate overly broad licensing discretion to a government official, (2) contains only content and viewpoint neutral reasonable time, place, and manner restrictions, (3) is narrowly tailored to serve a significant governmental interest, and (4) leaves open ample alternative means for communication.

150.    Defendants' Speech Permit Policies violate the First Amendment because they forbid students and student organizations from engaging in public speech activities without express written consent from university administrators.

151.    Defendants' Speech Permit Policies violate the First Amendment because they require students and student organizations to obtain permission in order to engage in anonymous or spontaneous speech.

152.    Defendants' Speech Permit Policies violate the First Amendment because they operate as a prior restraint on speech in areas of campus that are traditional or designated public forums for College students.

153.    Defendants' Speech Permit Policies violate the First Amendment because they discriminate based on content and viewpoint by exempting labor unions and expression regarding labor disputes from the policies.

154.    Defendants' Speech Permit Policies are unconstitutional "time, place, and manner" restrictions that violate Plaintiffs' and other students' right to freedom of speech prohibiting expression without prior approval, subjecting expression to the discretion of administrators, and

limiting expression to small zones on campus.

155.    Defendants' Speech Permit Policies are not reasonable nor valid time, place, and manner restrictions on speech because they are not content and viewpoint-neutral, they are not narrowly tailored to serve a significant government interest, and they do not leave open ample alternative channels of communication.

156.    Requiring advance approval in order to engage in speech in public areas of the College campus is not narrowly tailored to any legitimate interests.

157.    Limiting expressive activity to small designated zones is not narrowly tailored to any legitimate interests.

158.    Granting Defendants discretion to approve or deny permits to engage in expressive activity is not narrowly tailored to any legitimate interests.

159.    Defendants can satisfy any legitimate interests they may have without requiring advance permission to engage in expressive activities on campus.

160.    Defendants can satisfy any legitimate interests they may have without limiting expressive activity to small speech zones.

161.    Defendants can satisfy any legitimate interests they may have without granting Defendants discretion to approve or deny permits to engage in expressive activity.

162.    On information and belief the overbreadth of Defendants' Speech Permit Policies and related practices chill the speech both of Plaintiff Students and of students not before the Court who seek to engage in expression on campus.

163.    Defendants violated Plaintiffs' First Amendment right to freedom of speech by ordering them to stop engaging in speech activities and prohibiting them from engaging in any such speech activities on campus without first obtaining Defendants' permission.

164.    Defendants' Speech Permit Policies grant College administrators unbridled discretion to regulate speech based on content or viewpoint and are not narrowly tailored to a compelling state interest.

165.    By granting unbridled discretion to discriminate against speech based on its content

or viewpoint, the Speech Permit Policy violates the First Amendment regardless of whether that discretion has ever been unconstitutionally applied in practice.

166.     Defendants' Speech Permit Policies provide no guidelines or standards to limit the discretion of College officials in deciding when or whether to grant or deny a student's request to speak.

167.     Defendants' Speech Permit Policies give Defendants unbridled discretion to prohibit student speech based on its content and viewpoint.

168.     Because the Speech Permit Policies provides Defendants with unbridled discretion, allowing Defendants to consider any factors they choose and need not provide any written decision or rationale for denying or modifying a request for permission to speak on campus, students have no way to prove that a denial, restriction, or relocation of their speech was based on unconstitutional considerations.

169.     The First Amendment's prohibition against content and viewpoint discrimination requires Defendants to provide adequate safeguards to protect against the improper exclusion, restriction, or relocation of student speech based on its content or viewpoint.

170.     Because Defendants have failed to establish neutral criteria governing the decision whether to allow students to speak, and no written rationale is required, there is a substantial risk that College officials will engage in content and viewpoint discrimination when addressing student speech.

171.     Defendants' Speech Permit Policies are content- and viewpoint-based regulations of speech in a designated—if not traditional—public forum.

172.     Defendants' Speech Permit Policies violate Plaintiffs' right to free speech as guaranteed by the First Amendment to the United States Constitution.

173.     Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer irreparable harm.  Plaintiffs are entitled to an award of monetary damages and equitable relief.

174.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their First Amendment right to freedom of speech and an injunction against

Defendants' Speech Permit Policies.  Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

SECOND CAUSE OF ACTION
Violation of Plaintiffs' Fourteenth Amendment Right to Equal Protection of the Law

175.    Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–173 of this Complaint.

176.    The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the equal protection of the laws, which prohibits Defendants from treating Plaintiffs differently than similarly situated speakers.

177.    The government may not treat someone disparately as compared to similarly situated persons when such disparate treatment burdens a fundamental right, targets a suspect class, or has no rational basis.

178.    Plaintiffs are similarly situated to other speakers at the College.

179.    Plaintiffs wish to engage in speech supporting the right to work without being forced to participate in a union.

180.    Defendants prohibit Plaintiffs from engaging in such speech without a permit.

181.    Defendants' Speech Permit Policies exempt labor unions and individuals involved in labor disputes with the college from the policies permit and other requirements.

182.    Defendants' Speech Permit Policies do not exempt Plaintiffs from the policies' requirements when they wish to speak regarding unions and the right to work without joining a union.

183.    Defendants' Speech Permit Policies do not equally apply to speech that favors the right to work by Plaintiffs and to speech by union members or individuals in a labor dispute that opposes the right to work.

184.    Defendants' Speech Permit Policies favor the content of speech related to organized

labor disputes by members of a labor union (including college community members) and disfavors speech on the same topic by non-union members.

185.    Defendants' Speech Permit Policies favor the viewpoint of speech related to organized labor disputes by members of a labor union (including college community members) and disfavors speech on the same topic by non-union members.

186.    Defendants' Speech Permit Policies violate Plaintiffs' fundamental right to free speech.

187.    When government regulations, like Defendants' Speech Permit Policies, infringe on fundamental rights, discriminatory intent is presumed.

188.    Defendants' Speech Permit Policies are underinclusive, prohibiting some speech while leaving other speech equally harmful to any purported state interests unprohibited.

189.    Defendants lack a rational or compelling state interest for such disparate treatment of Plaintiffs.

190.    Defendants' Speech Permit Policies are not narrowly tailored as applied to Plaintiffs because Plaintiffs' speech does not implicate any legitimate interests Defendants may have.

191.    Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer irreparable harm.  Plaintiffs are entitled to an award of monetary damages and equitable relief.

192.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their Fourteenth Amendment right to equal protection and an injunction against Defendants' Speech Permit Policies.  Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants and provide Plaintiffs with the following relief:

(A)   A declaratory judgment that Defendants' Speech Permit Policies, facially and as-applied to Plaintiffs, violate Plaintiffs' rights under the First Amendment as applied to the states via the Fourteenth Amendment;

(B)   A declaratory judgment that Defendants' Speech Permit Policies facially and as-applied violate Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment;

(C)   A preliminary and permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing the Speech Permit Policies challenged in this Complaint;

(D)   Nominal damages in an amount to be determined at trial for the violation of Plaintiffs' First and Fourteenth Amendment rights from the Defendants sued in their individual capacities;

(E)   Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

(F)   All other further relief to which Plaintiffs may be entitled.

Respectfully submitted this 24th day of August, 2017,

By: /s/ J. Caleb Dalton

| | |
|---|---|
| | J. CALEB DALTON (D.C. Bar No. 1033291) |
| | M. CASEY MATTOX (D.C. Bar No. 1033672) |
| JOEL J. KIRKPATRICK (P62851) | |
| **JOEL J. KIRKPATRICK, P.C.** | **ALLIANCE DEFENDING FREEDOM** |
| 843 Penniman Avenue, Suite 201 | 440 1st Street NW, Suite 600 |
| Plymouth, MI 48170 | Washington, DC 20001 |
| (734) 404-5710 | (202) 393-8690 |
| (866) 241-4152 Fax | (202) 347-3622 Fax |
| joel@kirk-law.com | cdalton@ADFlegal.org |
| | cmattox@ADFlegal.org |

ATTORNEYS FOR PLAINTIFFS

**DECLARATION UNDER PENALTY OF PERJURY**

I, Julia Kovacova, a citizen of the United States and a resident of the State of Michigan,

hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and

correct to the best of my knowledge.

Executed this 15th  day of August, 2017, at Michigan.

_____

On behalf of myself individually and as a designated representative of Turning Point USA at
Macomb Community College, an unincorporated expressive association, and a recognized
student organization at Macomb Community College

## DECLARATION UNDER PENALTY OF PERJURY

I, Jaclyn Brohl, a citizen of the United States and a resident of the State of Michigan, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this 15th day of August, 2017, at Michigan.

## DECLARATION UNDER PENALTY OF PERJURY

I, Hannah Osantowske, a citizen of the United States and a resident of the State of Michigan, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this 22 day of August, 2017, at Michigan.

On behalf of myself individually and as a designated representative of Turning Point USA at Macomb Community College, an unincorporated expressive association, and a recognized student organization at Macomb Community College

24